IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 21, 2003 Session

# DONALD XIQUES v. CHARME KNIGHT

**Direct Appeal from the Circuit Court for Knox County**
**No. 1-570-02     Hon. Dale C. Workman, Circuit Judge**

**FILED SEPTEMBER 25, 2003**

**No. E2003-00435-COA-R3-CV**

Plaintiff sued defendant claiming defendant divulged confidential information to FBI and that agency refused to hire him, due to defendant's action, which violated his constitutional right to privacy. The Trial Court ruled that plaintiff was estopped to maintain action because he had been unsuccessful in a prior action in the federal court against the same defendant. On Appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in CHARLES D. SUSANO, JR., J., joined, and HOUSTON M. GODDARD, P.J., not participating.

Bruce Hill, Sevierville, Tennessee, for Appellant.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Martha A. Campbell, Senior Counsel, Nashville, Tennessee, for Appellee.

**OPINION**

In this action plaintiff sued Charme Knight ("defendant") an employee of the State of Tennessee, alleging that defendant deprived him of his constitutional rights. He alleges that in March of 1994, the Department of Children's Services filed a "no contact order" against him, on the basis of allegations of sexual abuse made by his wife during the course of their divorce and custody

litigation. Plaintiff alleged that the allegations were false, and that the DCS case was dismissed after an expert opined that no abuse had occurred. Plaintiff alleged that in March 1997, he applied for a position with the FBI, and advised them in the interview about the abuse allegations made by his ex-wife. He alleged that in June 1997, plaintiff was offered and accepted a "conditional appointment" with the FBI.

The Complaint continues that in September of 1997, the FBI rescinded the conditional offer of employment, and did not give any reason for its action, and that "after numerous and exhaustive attempts" to find out the basis for the withdrawal of the offer, plaintiff determined through an FOIA request, and that defendant, who is a prosecutor in the Knox County DA's office, told investigators that plaintiff was on a "secret list" or data base maintained by either DCS and the DA's office (or both), which lists sexual offenders. Plaintiff alleged that when the FBI interviewed a supervisory employee of DCS, that employee declined to give out any information and told the FBI that she had been advised by DCS counsel not to release any information, but that when the FBI interviewed defendant, defendant told the FBI that her office wanted to prosecute plaintiff, but did not do so upon the recommendation of the Knoxville Police Sex Abuse Investigator. Defendant also allegedly told the FBI that plaintiff was on the "active child perpetrator list." Further, plaintiff alleged that defendant knew why the FBI was interviewing her, and that she told the FBI "do what you want, but he is listed as an active sex offender."

The Complaint charges defendant with violating his right to privacy, and that the release of confidential information was prohibited by Tenn. Code Ann. §37-1-612. Also, defendant violated his right to due process and his liberty interest in employment, and interfered with his contract of employment in violation of Tenn. Code Ann. §47-50-109. Compensatory and punitive damages, as well as injunctive relief were requested.

Responding to the Complaint, the defendant raised the defense that the action was barred by collateral estoppel, by the statute of limitations, and should be dismissed for failure to state a claim. Defendant relied on a Sixth Circuit Court of Appeals decision, stating that it had already heard the matter, and had dismissed plaintiff's claims. After a hearing, the Trial Court dismissed plaintiff's claims based on collateral estoppel, res judicata, the statute of limitations, and the "prior judicial finding that the conversation giving rise to this action was privileged under the statute in question."

On appeal, plaintiff raises these issues:

1.      Whether the plaintiff's action is barred by collateral estoppel?

2.      Whether the plaintiff's action is barred by the statute of limitations?

3.      Whether the plaintiff has properly pled a cause of action for inducement of breach of contract?

Where a motion to dismiss has been granted, we must conduct a de novo review and take all of plaintiff's factual allegations as true to determine whether plaintiff has stated a cause of action. See Stein v. Davidson Hotel Co., 945 S.W.2d 714, 716 (Tenn.1997). On the issue of whether this action is barred by collateral estoppel and/or res judicata, a prior decision by the Sixth Circuit Court of Appeals, Xiques v. Knight, 2001 WL 1563927 (6th Cir. (Tenn.)) is pertinent.

The trial court found that plaintiff's action was barred by collateral estoppel and/or res judicata, based on the prior decision from the Sixth Circuit Court of Appeals. The Sixth Circuit held as follows:

> This is basically a defamation case brought under 42 U.S.C. §1983 and cast as a cause of action for the violation of federal due process. We conclude that the defendant, a state prosecutor, is entitled to qualified immunity because her statements did not violate "clearly established" federal law, a requirement for recovering damages.
>
> * * *
>
> In Paul v. Davis, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976), the plaintiff similarly sought to convert what the Court called "a classical claim for defamation" into a federal due process claim. The Supreme Court reviewed its previous cases and concluded that "we think that the weight of our decision establishes no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendments." 424 U.S. 702, 107 S. Ct. 3034. The opinion in Paul v. Davis suggested that there might be some cases where defamation under state law could lead to a viable due process claim but only if there were shown the deprivation of a federal liberty or property interest.
>
> * * *
>
> The defendant asserted the defense of qualified immunity under Anderson v. Creighton, supra. The District Court relied upon a state confidentiality statute regarding the state's child abuse registry to find a violation of clearly established law. That statute, T.C.A. §37-1-612, says that "in order to protect the rights of the child and the child's parents or other persons responsible for the child's welfare, all records concerning reports of child sex abuse . . . shall be confidential and exempt from other provisions of law, and shall not be disclosed . . .." But the statute lists a number of exceptions – for example, it allows disclosure to "a law enforcement agency investigating a report of known or suspected child sexual abuse." The District Court concluded that the defendant may have violated this state statute and declined on this

-3-

basis to extend federal qualified immunity to the defendant. From this decision the defendant appealed.

The problem we find with the plaintiff's case, and the reason we reverse the District Court with instructions to grant qualified immunity to the defendant, is that the plaintiff is unable to show a valid claim in defamation. Her statement to the FBI agent is protected by a long established common-law, good faith privilege that protects statements made in connection with background employment investigations and certain statements of public officials. As Professor Prosser said fifty years ago, "it is permissible to warn a present or prospective employer of the misconduct or bad character of an employee," Prosser, Torts 616 (2nd ed. 1955), and "it is agreed that communications made by a public officer in an honest effort to discharge his duties are at least conditionally privileged." Id. at 620. These two privileges come together in this case where the defendant, a public official, was called upon to give information in a public employment situation. The law has encouraged frank exchanges of information between prospective employers and public officials in these situations. . . . There is no basis in the record before us to find malice or lack of good faith by the defendant in her communications with the FBI agent in connection with the background check.

Thus we conclude that there is no "clearly established" state common law, much less any "clearly established" federal law, that would make the defendant liable in defamation or federal due process.

Plaintiff asserts that this prior decision does not establish a basis for collateral estoppel, because no state law issues were litigated or decided in the federal action. The district court's original Memorandum and Order, references state law claims, as does the Order following the Sixth Circuit's opinion. Those Courts' orders establish that state law claims were considered. In fact, the Sixth Circuit made clear that plaintiff's claim was basically a defamation claim "brought under 42 U.S.C. §1983 and cast as a cause of action for the violation of federal due process." Xiques v. Knight, 2001 WL 1563927 (6th Cir. (Tenn.)).

Collateral estoppel has been explained by this Court as follows:

Collateral estoppel, an issue preclusion doctrine, was devised by the courts to "conserve judicial resources, to relieve litigants from the cost and vexation of multiple lawsuits, and to encourage reliance on judicial decisions by preventing inconsistent decisions." Beaty v. McGraw, 15 S.W.3d 819 at 824 (Tenn. Ct. App.1998). The doctrine bars the parties or their privies from relitigating issues that were actually raised and determined in an earlier suit. Id.

Trinity Industries, Inc. v. McKinnon Bridge Co., Inc., 77 S.W.3d 159, 184 (Tenn. Ct. App. 2001).

The party seeking to invoke collateral estoppel has the burden of proof, and must show:

1.      that the issue sought to be precluded is identical to the issue decided in the earlier suit;

2.      that the issue sought to be precluded was actually litigated and decided on its merits in the earlier suit;

3.      that the judgment in the earlier suit has become final;

4.      that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier suit; and

5.      that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the issue now sought to be precluded.

Beaty v. McGraw, 15 S.W.3d 819, 825 (Tenn. Ct. App. 1998). Also see Richardson v. Tennessee Bd. of Dentistry, 913 S.W.2d 446, 459 (Tenn. 1995).

The parties are the same in both the federal and this action, and the federal Judgment is final.

Plaintiff argues that the issues in these two cases are not identical, because the Sixth Circuit opinion merely dealt with the issue of qualified immunity, and whether or not defendant had violated "clearly established law." Thus, plaintiff argues that the Sixth Circuit based its decision on federal law, and did not determine any of plaintiff's state law claims.[1]

The Opinion in the Sixth Circuit dealt mainly with the defamation claim, which they described as "brought under 42 U.S.C. §1983 and cast as a cause of action for the violation of federal due process." In other words, the Court recognized that plaintiff's federal civil rights claim was really a state law defamation claim couched in terms of a civil rights violation because it involved a public official. The Court said that such could be permissible if the plaintiff could show a deprivation of property or liberty, but then went on to discuss that there was no defamation in this case based on state law privilege. Id. From a plain reading of the opinion, it is clear that state law claims were considered and adjudicated.

---

[1] Plaintiff asserts that the federal court could not have considered state law claims, because they were ancillary, and because the federal court found it had no jurisdiction on federal claims. This is not the case, however, the federal court simply found that defendant was entitled to qualified immunity, not that the federal court was without jurisdiction.

Plaintiff's argument regarding collateral estoppel ignores the fact that both actions arose from the same facts and incidents, i.e., defendant's conversations with the FBI during a background check of plaintiff. Plaintiff's argument also ignores the fact that his state law defamation claim was actually dismissed by the Federal District Court in its original Memorandum and Order as being time-barred. The ruling is now final and establishes res judicata on that issue.

Plaintiff also argues that the state law claims were not litigated in federal court, but again, the only record we have of the federal court action shows that the state law claims were raised, considered, and adjudicated on their merits. There is nothing to indicate otherwise in the record before us. The Sixth Circuit found that the defendant was entitled to qualified immunity from any civil rights claims and both the district court and the Sixth Circuit dismissed plaintiff's defamation claims. These rulings are binding before us where the parties are the same and the issues are the same, and the issues were litigated and determined on the merits in that Judgment which has become final.

Plaintiff further argues that his 1983 claims were not time-barred, but since we hold plaintiff's claims are barred by collateral estoppel, however, there is no reason to consider this issue.

Finally, plaintiff argues the Trial Court failed to consider his claim for interference with his contract of employment and states that the elements of this tort include knowledge of the existence of a contract, intent to induce its breach, and that the defendant be shown to have acted maliciously. None of these elements have been shown in this case because there is no allegation that a contract definitely existed or that defendant knew about it, if it did. As to the element of malice, the Sixth Circuit specifically found that no malice had been shown. Xiques v. Knight., 2001 WL 1563927 (6th Cir. (Tenn.))[2]

As to the element of malice, we have stated:

> collateral estoppel is an issue preclusion doctrine. Once an issue has been actually or necessarily determined by a court of competent jurisdiction, the doctrine of collateral estoppel renders that determination conclusive on the parties and their privies in subsequent litigation, even when the claims or causes of action are different. It applies to both issues of law and issues of fact.

State ex rel. Cihlar v. Crawford, 39 S.W.3d 172, 179 (Tenn. Ct. App. 2000).

The Sixth Circuit found that defendant had not acted with malice, and its determination on this fact issue is binding in this litigation. Accordingly, we affirm the Judgment

---

[2]Plaintiff makes various arguments regarding the correctness of the Sixth Circuit's Opinion, but the ruling is now final and any issues plaintiff had with the proceedings in that case would have been properly pursued through the federal appellate process.

of the Trial Court and remand, with the cost of the appeal assessed to the appellant, Donald Xiques.


_____

HERSCHEL PICKENS FRANKS, J.